# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL E. HOLT, | 1:04-cv-06073-OWW-WMW (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION TO DISMISS UNCOGNIZABLE CLAIMS AND PROCEED ON COGNIZABLE CLAIMS |
| STOCKMAN, et. al., | |
| Defendants. | (Doc. 17) |

**I.   FINDINGS**

    **A.   Procedural History**

    Virgil E. Holt ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on August 9, 2004. On February 7, 2005, without leave of Court, and as a matter of right, Plaintiff filed a first amended complaint. On April 11, 2006, the Court granted Plaintiff's motion to amend once again. Plaintiff filed his second amended complaint on May 15, 2006.

    **B.   Screening Requirement**

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### C. Summary of Plaintiff's Second Amended Complaint

Plaintiff is a state prisoner at California Correctional Institution, Tehachapi. He complains of acts that occurred while he was incarcerated at California State Prison, Corcoran ("CSPC). Plaintiff names the following defendants: Chief Deputy Wardens, D.G. Stockman, M. Meske, L. Chrones, Mr. Yamamoto, & D.W. Sheppard/Brooks; Chief Deputy Warden of Operations, J. Marshal; Associate Warden, J. Yates; Third Level of Appeals Examiner, B. Sullivan; Facility Captains, S. Sherman, L. Marquez, R. Lowden, & D.D. Ortiz; Lieutenant W.R. Villareal; Correctional Counselors II, D. Bravo, D. Means, J.P. Cordova, and M. Vella; Correctional Counselors I, M.T. Cisneros, G. Reengal, R.M. Terrell, and Mrs. King; Sergeants, B. Silva & E. Lawton; Classification Staff Representatives, Don Oftendhal & F. Jaramillo; Doctors, Tepperman, Green, E. Bastien, & R. Leon; and Psyche Technician, R. Dowlings; Mental Health Social Worker, R. Gibson; Correctional Officers, M.F. Martinez, J. Mendoza, R. Zavala; Medical Technician Assistant, T.J. Caldwell; and Does 1-25.

Plaintiff alleges that he was placed in CSPC's security housing unit (SHU) – a placement

that he does not appear to attack in this action. Subsequent to his the lapsing of his minimum expected release date from the SHU, while awaiting transfer to another facility, Plaintiff was retained in CSPC's Ad-Seg for an additional 485 days. Plaintiff further that various of the defendants retaliated against him for filing administrative grievances. Plaintiff also alleges that he was subjected to excessive force when pepper spray was utilized to extract him from his cell and that he was not provided appropriate decontamination.

Plaintiff seeks declaratory, injunctive, and monetary relief.

### C. Pleading Requirements

#### 1. *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

### 2. *Federal Rule of Civil Procedure 18*

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

### 3. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

### D. **Plaintiff's Second Amended Complaint**

#### 1. *Inmate Appeals Process & Due Process*

Plaintiff alleged that B. Sullivan provided the third (and Dirctor's Level) review regarding his various administrative grievances. Doc. 17, pp. 11-17, 28-38, & 48-49.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters,

97 F.3d 987, 992-93 (7th Cir.1996).

Thus, Plaintiff is unable to state a cognizable claim for violation of his right to procedural due process against B. Sullivan based on the processing of Plaintiff's administrative grievances.

### 2. *Retention in Ad-Seg/SHU*

Plaintiff alleges that, while awaiting transfer to another facility, he was retained in Ad-Seg for an additional 485 days beyond his minimum expected release date. Prison officials conducted nine review hearings regarding his retention in Ad-Seg pending transfer. Doc. 17, pp. 11-17, 28-38, & 48-49.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68. With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff is not entitled to procedural due process protections in a vacuum. In order to be entitled under federal law to any procedural due process protections, plaintiff must first have a liberty interest at stake. Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from Ad-Seg. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the

6

SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

The Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence. "It is plain, that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir.1986). After a prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt v. Helms, 459 U.S. 460, 477 n.9; and Touissaint 801 F.2d at 1101.

Prison inmates do not have a constitutional right, grounded in the Due Process Clause itself, to be incarcerated at a particular correctional facility, to be transferred from one facility to another, or to participate in rehabilitative programs. Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985).

Because Plaintiff has not established the existence of a liberty interest in remaining free from Ad-Seg, Plaintiff may not pursue a claim for relief under section 1983 for deprivation of procedural due process. Further, even if he had a liberty interest in not being retained in Ad-Seg an additional 485 days, Plaintiff has alleged no facts that support his claim he was deprived of the minimal procedural due process protections he was due. Plaintiff was informed of the reasons for his placement in Ad-Seg and prison officials conducted nine review hearings regarding his retention in Ad-Seg pending transfer. It is of no consequence that Plaintiff was not present at all of the review hearings. See Hewitt v. Helms, 459 U.S. 460, 477 n.9; and Touissaint 801 F.2d at 1101. That defendants may have failed to comply with state regulations is not grounds for relief under section 1983 for deprivation of due process. Plaintiff is entitled to very limited due process protections under federal law with respect to placement in Ad-Seg. See

Toussaint, 801 F.2d at 1100-01.

Accordingly, the Court recommends that Plaintiff's claim for violation of his right to due process under the Fourteenth Amendment against defendants D.G. Stockman, J. Marshal, M. Meske, B. Sullivan, Mr. Yamamoto, D.W. Sheppard/Brooks, L. Chrones, L. Marquez, J. Yates, D.D. Ortiz, R. Lowden, D. Means, J.P. Cordova, D. Bravo, M. Vella, R.M. Terrell, Mrs. King, M.T. Cisneros, G. Reengal, E. Lawton, Don Oftendhal, F. Jaramillo, Dr. Tepperman, R. Leon, Dr. Greer, E. Bastine, R. Gibson, R. Dowling and Does 1-17 be dismissed for failure/inability to state a claim upon which relief may be granted.

### 3. *Conditions of Confinement*

An Eighth Amendment conditions of confinement claim appears implicated in Plaintiff's factual statement(s) – though not delineated as a separate claim for relief.

Plaintiff alleges that, within Ad-Seg prisoners: receive all meals in their cells; are not allowed to participate in any work training, educational programs, or social services programs/activities; are not allowed to have contact visits or telephone access; spend up to an average of 23 ½ hours a day isolated in their cells; are shackled or restrained when removed from their cells; and are subjected to yard exercise in an "enlarged dog kennel." Doc. 17, pp. 11-17, 28-38, & 48-49.

Further, Plaintiff alleges that his person, belongings, and cell were not properly decontaminated subsequent to being pepper sprayed. Doc. 17, pp. 39-47 & 49-53.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Although exercise is "one of the basic human necessities protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993), a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation. May v. Baldwin, 109 F.2d 557, 565 (9th Cir. 1997). Compare Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir.1994) (stating that a long-term deprivation of exercise is a denial of a basic human need in violation of the Eighth Amendment), *cert. denied*, 514 U.S. 1065 (1995); Spain v. Procunier, 600 F.2d 189,

199-200 (9th Cir.1979) (concluding that the deprivation of outdoor exercise for more than four years violates the Eighth Amendment).

Segregated prisoner's complaints that his recreation and visitation time were restricted, that he was denied certain personal items, and that he was handcuffed every time he left his cell were "far from extraordinary." Martin v. Scott, 156 F.3d 578, 579 n. 1, 580 (5th Cir.1998).

Plaintiff was provided yard/outdoor exercise. Even if his yard/outdoor exercise was in nothing more than an "enlarged dog kennel," the fact that he was provided exercise, and sustained no medical effects from restricted activity, causes his allegations not to rise to the level of a cognizable claim. Plaintiff's allegation that, while retained in Ad-Seg, he was not allowed to participate in work training, educational, behaviorally enhancing social services programs or activities does not rise to the level of a cognizable claim. Plaintiff's allegation that he was shackled, or placed in wrist and waist restraints, each time he left his cell while retained in Ad-Seg also does not rise to the level of a cognizable claim. Plaintiff fails to indicate how the conditions in Ad-Seg differed from those of the general population. Further, Plaintiff fails to allege that any of the defendants were deliberately indifferent to a substantial risk of harm. Thus, Plaintiff fails to state a cognizable claim regarding his conditions of confinement while retained in Ad-Seg awaiting transfer.

As to the alleged lack of adequate decontamination of Plaintiff's person, belongings, and cell subsequent to being pepper sprayed, "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); and Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). Thus, Plaintiff's states cognizable claims: (1) against B. Silva, R. Zavala, J. Mendoza, M.F. Martinez, T.J. Caldwell, and Does 18-25 for failing to decontaminate his person and living quarters from the pepper spray and failing to provide Plaintiff with clean clothing and linens; (2) against M.F. Martinez for causing Plaintiff to sleep for eleven days on a mattress "contaminated" with pepper spray; (3) against L. Chrones, S. Sherman, W.R. Villareal, B. Silva, M.F. Martinez, J. Mendoaa, R. Zavala, T.J. Caldwell, and Does 18-24 for failing to

decontaminate plaintiff for seventeen days after being pepper sprayed; (4) against Doe 18 for failing to provide him with underwear that did not have pepper spray on them and for failing to provide cleaning materials for Plaintiff to clean the pepper spray from his living quarters; (5) against B. Silva, M.F. Martinez, R. Zavala, and J. Mendoza for ignoring Plaintiff's request for decontamination of his person, living quarters, and medical attention due to prolonged exposure to pepper spray; and (6) against T.J. Caldwell for failing to respond to Plaintiff's request for medical attention due to his prolonged exposure to pepper spray.

### 4. *Retaliation*

Plaintiff alleges that numerous defendants retaliated against him for filing administrative grievances regarding his retention in Ad-Seg pending transfer to another facility. Doc 17, pp. 18-29 & 48-49.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). To establish a prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected activity, and defendants' actions did not serve a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt 65 F.3d at 807. The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. See Pratt 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

Plaintiff has stated cognizable claims for retaliation against M. Vella, D. Means, D.G. Stockman, Mr. Yamamoto, D.D. Ortiz, R. Leon, M.T. Cisneros, D. Bravo, R. Lowden, L. Chrones, L. Marquez, R.M. Terrell, R. Gibson, Does 2-13, Doe 17, and J. P. Cordova.

### 5. *Deliberate Indifference to Serious Medical Needs*

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a §1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Plaintiff has not sufficiently alleged that any of the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer v. Brennan, 511 U.S. at 837.

Plaintiff allegations that the defendants wrongfully retained him in Ad-Seg so as to cause Plaintiff to suffer emotional distress does not rise to the level of deliberate indifference to a serious medical need. Plaintiff does not allege that any of the defendants denied, delayed, or intentionally interfered with his medical treatment. Prison employees (including Wardens, CCII, CCI, Sergeants, Correctional Officers, and the like) are not physicians or medical providers per C.C.R. Title 15, Section 3354. Even in the light most favorable to plaintiff, non-medical prison personnel making decisions as to housing of an inmate are not medical providers.

While plaintiff has named medical physicians as defendants (Dr. Tepperman, Dr. Greer, Dr. Bastien, and Dr. Leon), he fails to state what if any serious medical need he presented with that they failed to medically treat.

Thus, Plaintiff fails to state a cognizable claim for deliberate indifference to his serious medical needs.

**6.** *Excessive Force*

Plaintiff alleges that, when he and several other SHU/Ad-Seg prisoners participated in a non-violent protest (using a sheet to block visibility into their cells), prison staff responded in a manner such that his Eighth Amendment rights were violated via the use of excessive force and cruel and unusual punishment. Doc. 17, pp. 39-47 & 49-53.

When a prison security measure is undertaken in response to an incident involving coordinated prisoner actions, such as occurred in this case, the question of whether the measures

taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 4, 5-7 (1992).

Factors such as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to the ultimate determination as to whether force used by prison personnel was excessive.  From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.  "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response."  Whitley v. Albers 475 U.S. 312, 321 (1986).

Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts know to them, and any efforts made to temper the severity of a forceful response.  Id., at 321. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary."  Whitley v. Albers, *supra* at 319; see also, Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1970).

In this case, Plaintiff alleges that B. Silva used excessive force against him by spraying pepper spray into his cell when he and other Ad-Seg prisoners obstructed the visibility into their cells.  B. Silva requested Plaintiff to remove the sheet obstructing visibility into his cell and Plaintiff declined to voluntarily comply.  Doc. 17, pp. 39-47 & 49-50.

Under these circumstances, the use of pepper spray by B. Silva did not constitute

excessive force.  Plaintiff fails and is unable to state a cognizable claim against B. Silva for use of excessive force.

Therefore, Plaintiff fails, and is unable, to state a claim against L. Chrones for authorizing the use of pepper spray to extract Plaintiff from his cell, under these circumstances.  Doc. 17, pp. 39-47 & 50.  Further, Plaintiff fails, and is unable, to state claims against S. Sherman, W.R. Villareal, J. Mendoza, M.F. Martinez, R. Zavala, R. Dowlings, & T.J. Caldwell for failing to abate B. Silva's use of chemical agents on Plaintiff.  Doc. 17, pp. 39-47 & 49-50.

### 7.  *Supervisorial Liability*

Plaintiff named supervisorial personnel: Chief Deputy Wardens, D.G. Stockman, M. Meske, L. Chrones, Mr. Yamamoto, & D.W. Sheppard/Brooks; Chief Deputy Warden of Operations, J. Marshal; Associate Warden, J. Yates; Third Level of Appeals Examiner, B. Sullivan; Facility Captains S. Sherman, L. Marquez, R. Lowden, & D.D. Ortiz; Lieutenant W.R. Villareal; Correctional Counselors II D. Bravo, D. Means, J.P. Cordova, and M. Vella; Correctional Counselors I M.T. Cisneros, G. Reengal, R.M. Terrell, and Mrs. King; Sergeants B. Silva & E. Lawton; Classification Staff Representatives Don Oftendhal & F. Jaramillo; and Doctors Tepperman, Green, E. Bastien, & R. Leon as defendants in this action.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be

alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

As discussed herein above, Plaintiff has alleged personal participation in events that led to the violation of his constitutional rights so as to state cognizable claims against B. Silva, R. Zavala, J. Mendoza, M.F. Martinez, T.J. Caldwell, L. Chrones, S. Sherman, W.R. Villareal, M. Vella, D. Means, D.G. Stockman, Mr. Yamamoto, D.D. Ortiz, R. Leon, M.T. Cisneros, D. Bravo, R. Lowden, L. Marquez, R.M. Terrell, R. Gibson, and J. P. Cordova

Plaintiff failed to make allegations that M. Meske, D.W. Sheppard/Brooks, J. Marshal, J. Yates, B. Sullivan, B. Reengal, Mrs. King, E. Lawton, Don Oftedahl, F. Jaramillo, Mr. Tepperman, Dr. Greer, E. Bastien, and R. Dowlings personnel personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. Thus, Plaintiff failed to state a cognizable claim against M. Meske, D.W. Sheppard/Brooks, J. Marshal, J. Yates, B. Sullivan, B. Reengal, Mrs. King, E. Lawton, Don Oftedahl, F. Jaramillo, Mr. Tepperman, Dr. Greer, E. Bastien, and R. Dowlings, so as to necessitate their dismissal with prejudice from this action.

### 8. *State Law Claims*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v.

16

Gibbs, 383 U.S. 715, 726 (1966).

The Court reserves discretion to exercise supplemental jurisdiction over and to address Plaintiff's state law claims.

## II. RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's second amended complaint filed on May 15, 2006 against the following defendants on the following claims:

   a. against B. Silva, R. Zavala, J. Mendoza, M.F. Martinez, T.J. Caldwell, and Does 18-25 for failing to decontaminate his person and living quarters from the pepper spray and failing to provide Plaintiff with clean clothing and linens;

   b. against M.F. Martinez for causing Plaintiff to sleep for eleven days on a mattress "contaminated" with pepper spray;

   c. against L. Chrones, S. Sherman, W.R. Villareal, B. Silva, M.F. Martinez, J. Mendoza, R. Zavala, T.J. Caldwell, and Does 18-25 for failing to decontaminate plaintiff for seventeen days after being pepper sprayed;

   d. against Doe 18 for failing to provide him with underwear that did not have pepper spray on them and for failing to provide cleaning materials for Plaintiff to clean the pepper spray from his living quarters;

   e. against B. Silva, M.F. Martinez, R. Zavala, and J. Mendoza for ignoring Plaintiff's request for decontamination of his person, living quarters, and medical attention due to prolonged exposure to pepper spray;

   f. against T.J. Caldwell for failing to respond to Plaintiff's request for medical attention due to his prolonged exposure to pepper spray; and

  g. for retaliation against M. Vella, D. Means, D.G. Stockman, Mr. Yamamoto, D.D. Ortiz, R. Leon, M.T. Cisneros, D. Bravo, R. Lowden, L. Chrones, L. Marquez, R.M. Terrell, R. Gibson, J.P. Cordova, and Does 2-13 &17.

2. Plaintiff's following claims against the following defendants be dismissed with prejudice for failure/inability to state a claim:

  a. for violation of his right to due process under the Fourteenth Amendment against B. Sullivan based on the processing of administrative grievances;

  b. for violation of his right to due process under the Fourteenth Amendment against defendants D.G. Stockman, J. Marshal, M. Meske, B. Sullivan, Mr. Yamamoto, D.W. Sheppard/Brooks, L. Chrones, L. Marquez, J. Yates, D.D. Ortiz, R. Lowden, D. Means, J.P. Cordova, D. Bravo, M. Vella, R.M. Terrell, Mrs. King, M.T. Cisneros, G. Reengal, E. Lawton, Don Oftendhal, F. Jaramillo, Dr. Tepperman, R. Leon, Dr. Greer, E. Bastine, R. Gibson, R. Dowling and Does 1-17;

  c. for the general conditions of his confinement while retained in Ad-Seg pending transfer to another facility against any/all defendants;

  d. for deliberate indifference to his serious medical needs against any/all defendants;

  e. for use of excessive force against B. Silva;

  f. for authorizing the use of pepper spray to extract Plaintiff from his cell against L. Chrones; and

  g. for failing to abate B. Silva's use of chemical agents on Plaintiff against S. Sherman, W.R. Villareal, J. Mendoza, M.F. Martinez, R. Zavala, R. Dowlings, T.J. Caldwell, and Does 1 & 14-16.

3. Defendants M. Meske, D.W. Sheppard/Brooks, J. Marshal, J. Yates, B.

Sullivan, B. Reengal, Mrs. King, E. Lawton, Don Oftedahl, F. Jaramillo, Mr. Tepperman, Dr. Greer, E. Bastien, and R. Dowlings be dismissed with prejudice for failure/inability to state a claim.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 18, 2008**                    /s/  **William M. Wunderlich**
                                                         UNITED STATES MAGISTRATE JUDGE