IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Virgil E. Holt,<br><br>    Plaintiff,<br><br>vs.<br><br>D. G. Stockman, et al.,<br><br>    Defendants. | No. CV 1-04-6073-MHM<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Partial Summary Judgment (Doc. 154) and Plaintiff's Motion to Compel (Doc. 170). The Court has considered the motions, the responses and replies thereto, as well as the applicable law, and now enters its ruling.

**Motion for Partial Summary Judgment**

Plaintiff Virgil Holt is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is presently housed at California State Prison, Lancaster, California. Plaintiff, proceeding pro se, filed the present civil-rights lawsuit under 42 U.S.C. § 1983 for acts that he alleged took place while he was housed at California State Prison, Corcoran, California ("CSPC"). Plaintiff claims that he was subjected to excessive force when pepper spray was used to extract him from his cell and that he was not provided appropriate decontamination. Plaintiff further alleges that various defendants retaliated

against him for filing administrative grievances in violation of his First Amendment rights. Plaintiff also seeks injunctive relief against correctional officers at CSPC.

Defendants Vella, Yammamoto, Ortiz, Cisneros, Bravo, Marquez, Terrell, Lowden and Cordova seek partial summary judgment on Plaintiff's retaliation claim.[1] In addition, all Defendants seek summary judgment on Plaintiff's claim for injunctive relief.

## I. BACKGROUND

The following facts are taken mainly from Defendants' Statement of Undisputed Facts ("DSUF"), which Plaintiff has failed to admit or deny as required by Local Rule 260(b). Before Plaintiff arrived at CSPC, he was housed in administrative segregation ("Ad-Seg") on August 29, 2001, at Salinas Valley State Prison for possession of a weapon. (DSUF 2) While at Salinas Valley, he was endorsed for transfer to the Security Housing Unit (SHU) at CSPC. (DSUF 3) At his initial SHU review at CSPC, Plaintiff was assessed a SHU term of ten months, with a minimum expected release date of April 14, 2002. (DSUF 4)

At a classification committee hearing held on February 13, 2002, Plaintiff was issued a CDCR 114-D form explaining that he might be retained in administrative segregation beyond his expected release date. (DSUF 6) Plaintiff was told that he would be recommended for transfer to a more restrictive 180-design prison because his security requirements made him unsuitable for a 270-design prison, such as CSPC. (DSUF 7)

---

[1] Defendants Gibson and Leon were dismissed without prejudice on November 24, 2009, for failure to serve. (Doc. 110). Plaintiff was notified that if he did not effectuate service upon these Defendants by January 22, 2010, the action would be dismissed with prejudice as to these Defendants. Accordingly, because these Defendants have not been served, the Court will dismiss the action with prejudice as to Defendants Gibson and Leon.

The Court notes that Defendants Stockman, Chrones, and Means do not join in the motion for partial summary judgment.

The Court further notes that other Defendants and claims were previously dismissed following screening of the amended complaint. (Docs. 20, 29).

At the hearing, the Institutional Classification Committee ("ICC") recommended that Plaintiff be transferred to California State Prison, Sacramento, with California Correctional Institute ("CCI") as an alternate. (DSUF 11) After the ICC met, Plaintiff's counselor, Defendant Vella, typed up the record of the meeting on a CDCR 128-G, signed it, and forwarded that document to the Correctional Counselor II. (DSUF 12)

After all members of the committee signed the document, the chair of the ICC sent the document back to the facility, and from there it was sent it to the Records office. (DSUF 13) The 128-G form then went to the Classification Staff Representative's ("CSR") desk at the Records office, because all transfers had to be reviewed by the CSR, who had the authority to approve or disapprove of any transfer. (DSUF 14) If the CSR found that transfer was appropriate but the recommended institution was closed to intake, the CSR could endorse the inmate for transfer to another appropriate institution. (DSUF 16)

The ICC's transfer recommendations expired after sixty days. (DSUF 21) After the February 13, 2002 ICC meeting, Counselor Vella scheduled Plaintiff for ICC review again on April 10, 2002, because the CSR had not reviewed the transfer recommendation, and it had become clear that the CSR would not be able to do so before the recommendation expired on April 13, 2002. (DSUF 22, 23) On April 10, 2002, the ICC once again recommended that Plaintiff be transferred to California State Prison, Sacramento, with CCI as an alternate. (DSUF 24)

On May 28, 2002, Plaintiff was endorsed by CSR Oftedahl for transfer to CCI. (DSUF 25) Counselor Vella scheduled Plaintiff for his regular review by the ICC on July 17, 2002. (DSUF 26) The committee noted that he had been endorsed for transfer to CCI by the CSR on May 28, 2002, but had not yet been transferred. (DSUF 27) The ICC therefore recommended that the CSR grant a 120-day extension of Plaintiff's administrative segregation housing. (DSUF 28) That same day, July 17, 2002, Plaintiff was moved from the SHU to Ad-Seg, where he awaited transfer. (DSUF 29) With that move, Plaintiff ceased

to be on Counselor Vella's caseload. (DSUF 31) Thereafter, Defendant CCI Cisneros became Plaintiff's counselor. (DSUF 32)

Plaintiff submitted an administrative appeal on May 5, 2002, against Defendant Vella "for refusing to release him from SHU." (Doc. 163, p. 3) On May 8, 2002, Plaintiff filed another administrative appeal against Vella "for refusing to submit his case to the CSR for transfer endorsement." (Id.) According to his Second Amended Complaint, Vella confronted Plaintiff on June 24, 2002, and told him that he would stay off the mainline for another year in retaliation for the appeal. (Doc. 17, ¶¶ 101, 102)

Plaintiff's status was reviewed several more times by the ICC after July 25, 2002, before he finally transferred to High Desert State Prison on August 12, 2003. (DSUF 39)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Chelates Corp. v. Citrate, 477 U.S. 317, 323, (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, in order to preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party. Id.; Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995). In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the nonmovant. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The

Court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). Further, the Court must draw all reasonable inferences in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the nonmoving party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); Anderson, 447 U.S. at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In sum, the question on motion for summary judgment is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 447 U.S. at 251–52. A district court is not required to probe the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmovant has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id.; see Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the record that creates a genuine issue of material fact, a district court may grant summary judgment if the opposing party's papers do not include or conveniently refer to that evidence). The mere existence of a scintilla of evidence supporting the nonmovant's petition is insufficient; there must be evidence from which a trier of fact could reasonably find for the nonmovant. Id. at 252; see Matsushita Elec., 475 U.S. at 586 (nonmovant's showing of "some metaphysical doubt" as to material facts insufficient to defeat summary judgment).

///

## III.     DISCUSSION

### 1.     Defendant Vella

A viable claim of First Amendment retaliation within the prison context entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005.) A plaintiff bears "the high burden of showing that filing the inmate appeal was a substantial motivating factor" underlying any alleged retaliatory action by defendants. Hines v. Gomez, 853 F. Supp. 329, 332 (N.D. Cal. 1994). If a plaintiff meets this burden, defendants may establish by a preponderance of the evidence that they would have taken the same action even in the absence of the protected conduct. Id.; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). A plaintiff's failure to establish the "absence of legitimate correctional goals for the conduct of which he complains" precludes recovery. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff's retaliation claim against Defendant Vella is premised on his contention that she told him, on June 24, 2002, that she would ensure that he "stay[ed] off the mainline for at least another year" in retaliation for his filing administrative appeals. (Doc. 17, Plaintiff's Second Amended Complaint, ¶¶ 101, 102). Plaintiff contends that his retaliation theory is supported by his sworn statements that he was retained in the SHU after his minimum eligible release date ("MERD") expired, rather than in administrative segregation as the ICC recommended on February 13, 2002. (Doc. 163, pp. 11-12) A review of the pertinent dates does not support his theory. Plaintiff's MERD was April 14, 2002. (Doc. 154-6, Ex. D) Plaintiff's status was reviewed by the ICC on April 10, 2002, which recommended retaining him in administrative segregation pending transfer "due to safety & security of institution." (Id., Ex. E; Ex. I, p. 23) Plaintiff filed his administrative appeals against Vella on May 5, 2002, and May 8, 2002. (Doc. 163, p. 3) According to Plaintiff, he was retained in the SHU

past April 14, 2002, in retaliation for administrative appeals he would file three weeks later, which is an impossibility. Plaintiff's facts demonstrate that his retention in the SHU was not the result of retaliation for filing administrative appeals because he was retained in the SHU *before* the administrative appeals were filed. As such, Plaintiff has failed to meet "the high burden of showing that filing the inmate appeal was a substantial motivating factor" underlying any alleged retaliatory action by Vella. See Hines, 853 F. Supp. at 332. Furthermore, the record demonstrates that Plaintiff's retention in the SHU "reasonably advance[d] a legitimate correctional goal." Rhodes, 408 F.3d at 567. Whatever irregularities may have occurred during the classification hearings in 2002 and 2003, Plaintiff has produced no evidence to create a triable issue of fact that any were the result of a plan by Vella to ensure that he was retained in segregation after filing his administrative appeals. Accordingly, the Court will grant summary judgment with respect to Defendant Vella.

  2. **Defendants Yamamoto, Ortiz, Cisneros, and Bravo - July 25, 2002 ICC Hearing**

In his Second Amended Complaint, Plaintiff alleges that the ICC told him on July 5, 2002, that he was being moved to the end of the transfer list, and that Defendant Stockman told him this was done because Plaintiff filed an administrative appeal. (Doc. 17, Plaintiff's Second Amended Complaint, ¶¶ 105, 106) The single allegation against Defendants Yamamoto, Ortiz, Cisneros, and Bravo is that they did nothing to oppose Defendant Stockman. (Id.) Plaintiff claims that all members of the ICC are equally responsible for the outcome of ICC hearings, regardless of their role on the committee. (Doc. 163, pp. 16-18)

Defendants have produced evidence in the form of declarations by Defendant Stockman and Chrones, who have served as ICC chairmen, that the decisions made by the ICC are the sole responsibility of the chairperson of the ICC. (Docs. 154-4, 154-5) This evidence demonstrates that although other committee members are responsible for providing the ICC chairperson with information, such as the case factors that help determine an appropriate housing and program placement for the inmate, including mental health status, enemies,

physical disabilities, disciplinary history, and other factors, decisions about an inmate's placement and programming are ultimately made by the ICC chairperson. (Id.) The declarations state that other committee members cannot contravene the decision of the ICC chairperson, and the chairperson's decisions are not subject to majority vote, thus the ICC chairperson is the only person responsible for decisions made by the committee. (Id.)

Plaintiff cites California Code of Regulations, title 15, § 3375(f)(7) in support of the proposition that committee decisions are based on the evaluation of available information and mutual agreement of the committee members. However, that regulation does not require unanimity, as Plaintiff's argument seems to suggest.

Citing California Code of Regulations, title 15, § 3375(g)(1)(F), Plaintiff also argues that a committee member may record his or her disagreement with the committee's actions on the 128-G form documenting the action, and thus a 128-G that does not contain recorded opinions, as in his case, indicates unanimity. (Doc. 163, p.17) However, Defendants point out that the cited version of Title 15, while applicable today, was not applicable in 2002, thus while state regulations now may provide a means for determining whether a particular committee member agrees with a committee decision, there is no basis for his conclusion that a 128-G from 2002 that does not record the opinions of individual committee members shows unanimity. Accordingly, the state regulations cited by Plaintiff do not show that all committee members joined in the decision of the committee chair, and thus they do not contradict Defendants' undisputed evidence that the decision of the ICC was made by, and the responsibility of, the chairperson.

Plaintiff also cites Defendant Cordova's interrogatory response that disagreements among committee members are usually noted on the 128-G. (Doc. 163, Ex. I) However, Defendants point out that Plaintiff's reliance on this response is unavailing because the interrogatory asks about current practice, not the practice in 2002, and that Cordova's response is consistent with the current form of § 3375, and is silent about what common practice was in 2002, when the regulation did not address disagreements within the committee.

Citing California Code of Regulations, title 15, § 3375(g)(7), Plaintiff correctly notes that the 128-G classification form must include the names and titles of staff who participate in the decision. But as Defendants' evidence shows, there are many ways to participate in a decision, including providing relevant information about the inmate to the chairperson. (Docs. 154-4, 154-5) Plaintiff's evidence thus does not contradict Defendants' undisputed facts.

Plaintiff cites Defendants Yamamoto's and Lowden's interrogatory responses that all committee members had the authority to make appropriate recommendations to the chairman, including recommendations with respect to release from administrative segregation and transfer to a different institution. (Doc. 163, pp. 17-18) These responses, however, do not demonstrate that Defendants could have overruled Defendant Stockman and thus they do not contradict Defendants' undisputed facts. Accordingly, Plaintiff does not raise a triable issue of material fact that Defendants Yamamoto, Ortiz, Cisneros, or Bravo violated Plaintiff's constitutional rights, and the Court will grant summary judgment in their favor.

3.  **Defendant Cisneros - January 6, 2003, and April 10, 2003 ICC Hearings**

Plaintiff also claims that Defendant Cisneros is liable for failing to bring him to the classification hearings on January 6 and April 10, 2003, and therefore the results of those hearings are in violation of his rights and are thus invalid. The validity of the classification hearings is not at issue, however; Plaintiff's only claim against Cisneros is for retaliation. To defeat summary judgment, Plaintiff must present evidence that Counselor Cisneros conspired with Counselor Vella to keep Plaintiff in administrative segregation and prevent his transfer. Because Plaintiff has not presented such evidence, let alone made allegations in this regard, Plaintiff has failed to raise a triable issue of material fact regarding retaliation by Cisneros. Accordingly, the Court will grant summary judgment in favor of Defendant Cisneros.

///

///

4.    **Defendants Marquez, Cisneros, Terrell, and Bravo - May 22, 2003 ICC Hearing**

Plaintiff makes the same argument against Defendants Marquez, Cisneros, Terrell, and Bravo, who were present at the May 22, 2003 ICC hearing, that he advanced against Defendants Yamamoto, Ortiz, Cisneros, and Bravo, i.e., that all members of a classification committee are legally liable for the decision of the committee chairman. In addition, he also claims that these Defendants prevented him from boarding a bus that arrived at CSPC on July 14, 2003, to transport inmates to CCI. (Doc. 163, p. 20) Plaintiff presents no evidence to support this allegation. Accordingly, for the same reasons discussed above, the Court will grant summary judgment in favor of Defendants Marquez, Cisneros, Terrell, and Bravo.

5.    **Defendants Lowden, Terrell, and Cordova - July 30, 2003 ICC Hearing**

Plaintiff advances the same argument against Defendants Lowden, Terrell, and Cordova, who were present at the July 30, 2003 ICC hearing, that he does against Defendants Yamamoto, Ortiz, Cisneros, and Bravo, i.e., that all members of a classification committee are legally liable for the decision of the committee chairman. Accordingly, for the same reasons discussed above, the Court will grant summary judgment in favor of Defendants Lowden, Terrell, and Cordova.

6.    **Claim for Injunctive Relief**

Plaintiff seeks injunctive relief against correctional officers at CSPC. (Doc. 17, Plaintiff's Second Amended Complaint, pp. 55-57) Where a party seeks injunctive relief, he must show a serious threat of real, immediate, and irreparable injury. Spencer v. Kemna, 523 U.S. 1, 7 (1998); Goldie's Bookstore v. Super. Ct., 739 F.2d 466, 472 (9th Cir. 1984). If the relative positions of the parties change so as to negate the possibility of the harm the requested injunction seeks to prevent, there is no longer any case or controversy to which an injunction can apply. For this reason, a prisoner's claim is rendered moot when he is transferred from the institution whose employees he seeks to enjoin from harming him. Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

Claims that are "capable of repetition, yet evading review," are excepted from the mootness doctrine. Spencer, 523 U.S. at 18. A party seeking to bring his case within the purview of that exception, however, must demonstrate that: (1) the challenged action is too short in duration to be fully litigated prior to cessation or expiration; and (2) there is a reasonable likelihood that he will be subject to the same action again. Id. In the context of a prisoner's claim for injunctive relief for civil rights violations, he must demonstrate a reasonable expectation of being transferred back to the institution where the violations occurred. Johnson, 948 F.2d at 519.

Plaintiff claims that he "may at some point" be transferred back to CSPC, although he admits he has no present expectation that will happen. (Doc. 163, p. 21) Plaintiff claims that because he "may someday" be transferred back to CSPC, there is a "possibility" that he could be retaliated against, if he "return[s] to the [SHU] or ad-seg again." (Id.) Plaintiff's conjecture regarding a return to CSPC does not constitute a "serious threat of real, immediate, and irreparable injury" that would entitle him to injunctive relief. See Spencer, 523 U.S. at 7. Accordingly, the Court will deny as moot Plaintiff's claim for injunctive relief as to all Defendants.

### Motion to Compel

Plaintiff has filed a Motion to Compel discovery together with supporting documentation totaling almost 400 pages. (Docs. 169, 170, 171) In light of the Court's ruling on Plaintiff's motion for summary judgment, the Court will deny as moot the Motion to Compel as to Defendants Vella, Cordova, Cisneros, Lowden, Bravo, Marquez, Ortiz, Terrell, and Yamamoto.

The Court has reviewed the remaining sixty-nine challenged requests for admissions and requests for production of documents with respect to Defendants Caldwell, Stockman, Means, Sherman, Villareal, Zavala, Silva, Martinez, Mendoza, and Chrones, as well as Defendants' opposition thereto. (Doc. 179) Defendants contend that their responses are legally sufficient, and with the exception of Defendant Villareal's response to Plaintiff's

request for production of documents number 5, the Court agrees. The Court notes that Defendant Villareal admitted that his response to Plaintiff's request for production of documents number 5 was erroneous and stated that it would be supplemented within ten days of the filing of Defendants' Opposition brief on July 22, 2011. Accordingly, the Court will deny Plaintiff's Motion to Compel with respect to Defendants Vella, Cordova, Cisneros, Lowden, Bravo, Marquez, Ortiz, Terrell, Yamamoto, Caldwell, Stockman, Means, Sherman, Villareal, Zavala, Silva, Martinez, Mendoza, and Chrones.

Plaintiff requests that the Court impose sanctions on the Defendants "because the Defendants' responses are insufficient, . . . untimely, and some were not verified." (Doc. 169, p. 34) Discovery sanctions are authorized where a party has failed to comply with a court order or failed to respond to discovery entirely. Fed. R. Civ. P. 37(b) and (d). Neither of these circumstances is present here. Further, Plaintiff has not shown that defense counsel's nine-day delay in serving some of Defendants' discovery responses has prejudiced him, nor has Plaintiff objected to any of the late-served discovery responses. Because there is no basis for Plaintiff's request for sanctions, the Court will deny it.

## IV.    CONCLUSION

As discussed above, Plaintiff has failed to respond to Defendants' Statement of Undisputed Facts as required by Local Rule 260(b). Additionally, Plaintiff's Opposition and supporting declarations and exhibits do not place any material fact in dispute to preclude summary judgment. Accordingly,

**IT IS ORDERED** granting Defendants Vella, Cordova, Cisneros, Lowden, Bravo, Marquez, Ortiz, Terrell, and Yamamoto's Motion for Partial Summary Judgment with respect to Plaintiff's retaliation claim. (Doc. 154)

**IT IS FURTHER ORDERED** denying as moot Plaintiff's claim for injunctive relief as to all Defendants.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Compel with respect to Defendants Vella, Cordova, Cisneros, Lowden, Bravo, Marquez, Ortiz, Terrell, Yamamoto,

Caldwell, Stockman, Means, Sherman, Villareal, Zavala, Silva, Martinez, Mendoza, and Chrones. (Doc. 170)

**IT IS FURTHER ORDERED** denying Plaintiff's request for sanctions. (Doc. 169)

**IT IS FURTHER ORDERED** dismissing this action with prejudice as to Defendants Gibson and Leon.

In light of the Court's order above, the claims that remain are:

1) against Defendants Caldwell, Martinez, Mendoza, Silva, and Zavala, for failing to decontaminate Holt's person and living quarters from the pepper spray and failing to provide Holt with clean clothing and linens;

2) against Martinez for causing Plaintiff to sleep for eleven days on a mattress contaminated with pepper spray;

3) against Caldwell, Chrones, Martinez, Mendoza, Sherman, Silva, Villareal, and Zavala for failing to decontaminate plaintiff for seventeen days after being pepper sprayed;

4) against Martinez, Mendoza, Silva, and Zavala, for ignoring Plaintiff's request for decontamination of his person, living quarters, and medical attention due to prolonged exposure to pepper spray;

5) against Caldwell for failing to respond to Plaintiff's request for medical attention due to his prolonged exposure to pepper spray; and

6) against Chrones, Means, and Stockman for retaliating against Holt because of his filing a grievance regarding his not being transferred to a different prison promptly.

DATED this 24th day of January, 2012.

Mary H. Murguia
U.S. Circuit Court Judge
Designated as United States District Judge

- 13 -